**Lucy Huth SPEIGHTS, Executrix of the Estate of Charles H. Speights, also known as Charles Hall Speights, deceased, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 17–61.**

United States District Court
D. New Jersey.

Oct. 3, 1962.

Meyer Sugarman, Passaic, N. J., for plaintiff.

Louis F. Oberdorfer, Asst. U. S. Atty. Gen., Edward S. Smith, Jerome Fink, Leonard M. Goldberg, U. S. Dept. of Justice, Washington, D. C., for defendant.

AUGELLI, District Judge.

This is an action by plaintiff, as executrix of the estate of her late husband, Charles H. Speights, for refund of $4,-047.98 in estate taxes alleged to have been erroneously assessed against the estate and collected therefrom by the Commissioner of Internal Revenue.

Shortly before his death, decedent transferred to his wife his interest in five life insurance policies on his life, of which she was the beneficiary, and also in the home he and his wife owned as tenants by the entirety. These transfers were shown in the federal estate tax return filed by plaintiff, but the value thereof was not included in the taxable gross estate. The Commissioner determined that these transfers were made in contemplation of death and that the value of decedent's interest in the property transferred should have been included in decedent's gross estate for estate tax purposes.

The following facts were stipulated by the parties:

The transfers of property from decedent to his wife took place between July 7 and July 14, 1958. At the time these transfers were made, decedent was in apparent good health.

Decedent was born on September 7, 1899 and died of coronary arteriosclerosis on August 6, 1958. At his death, decedent was the Freight Sales Manager and Assistant Vice-President of American President Lines, with an office in New York City. He resided and was domiciled with his wife in Rutherford, New Jersey.

In January of 1958, decedent consulted one Donald F. Sands, an attorney in Cleveland, Ohio, for the purpose of having his will revised. Mr. Sands had been decedent's lawyer before decedent moved from Ohio to New Jersey and had drawn decedent's will in 1948. Since that time, decedent's financial worth had increased substantially. Mr. Sands recommended to decedent that he seek counsel in New Jersey or New York and plan his estate and redraft his will so as to save estate taxes. Decedent did, in February, 1958, consult one Horace D. McCowan, Jr., a New York attorney.

After consulting with Mr. McCowan in February, 1958, decedent sent the lawyer a memorandum which set forth the property owned by decedent and its then value. The memorandum was accompanied by a letter in which decedent asked Mr. McCowan to suggest a plan that would best protect decedent's family "Federal Inheritance tax-wise".

Under date of February 28, 1958, Mr. McCowan sent decedent an outline of an estate plan in which he suggested, inter alia, that decedent might reduce administration expenses and estate taxes by assigning ownership of an insurance policy and his interest in the family residence to his wife. In connection with the overall estate planning, Mr. McCowan prepared drafts of wills for decedent and his wife, but these wills were never executed.

By letter dated July 30, 1958, decedent informed Mr. McCowan that he, decedent, had transferred to his wife his interest in the family residence and in all of his insurance policies, with the exception of a company group policy which was not assignable. These transfers, as previously noted, were made between July 7 and July 14, 1958.

The sole issue in this case is whether these transfers were made by decedent in contemplation of death within the meaning of Section 2035 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 2035. That section, in pertinent part, reads as follows:

"(a) *General rule.*—The value of the gross estate shall include the value of all property * * * to the extent of any interest therein of which the decedent has at any time made a transfer * * *, by trust or otherwise, in contemplation of his death.

"(b) *Application of general rule.* —If the decedent within a period of 3 years ending with the date of his death * * * transferred an interest in property, * * * such transfer * * * shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this section * * *; but no such transfer * * * made before such 3-year period shall be treated as having been made in contemplation of death."

■ The transfers in question were all made within one month before the decedent's death. A transfer within three years of decedent's death raises a presumption that such transfer was made in contemplation of death. The plaintiff has the burden of proving, by a fair preponderance of the evidence, that the transfers in this case were not made in contemplation of death. Oliver v. Bell, 103 F.2d 760 (3 Cir., 1939).

■ The term, "in contemplation of death", has been defined in Treasury Regulations on Income Tax (1954 Code), § 20.2035–1(c) as follows:

"The phrase 'in contemplation of death', as used in this section, does not have reference to that general expectation of death such as all persons entertain. On the other hand, its meaning is not restricted to an apprehension that death is imminent or near. A transfer 'in contemplation of death' is a disposition of property prompted by the thought of death (although it need not be solely so prompted). A transfer is prompted by the thought of death if (1) made with the purpose of avoiding death taxes, (2) made as a substitute for a testamentary disposition of the property, or (3) made for any other motive associated with death. The bodily and mental condition of the decedent and all other attendant facts and circumstances are to be scrutinized in order to determine whether or not such thought prompted the disposition."

In other words, if the instant transfers were made with the purpose of avoiding death taxes, they must be held to have been made in contemplation of death. It only remains for this Court to determine from all of the circumstances what the decedent had in mind when he made these transfers.

Plaintiff asserts that in making these transfers, the decedent was motivated by more than just the desire to avoid the payment of estate taxes. She points to her testimony that decedent told her he felt that "a home really was a woman's

more than it was a man's". She also testified decedent desired to provide for her and her aged mother who lived with them, and that she had made an $8,000.-00 investment in the house. In addition, plaintiff points to decedent's apparent good health at the time the transfers were made.

The law is clear that in a case such as this, the good health of a deceased taxpayer, standing alone, is not controlling. He need not be in fear of imminent death nor expect death in the near future. United States v. Wells, 283 U.S. 102, 51 S.Ct. 446, 75 L.Ed. 867 (1930); United States v. Tonkin, 150 F.2d 531 (3 Cir., 1945); Slifka v. Johnson, D.C., 63 F.Supp. 289, aff'd 161 F.2d 467 (2 Cir., 1947), cert. den. 332 U.S. 758, 68 S.Ct. 57, 92 L.Ed. 344.

It is clear from the testimony of the plaintiff (the only witness called at the trial) and from the stipulated facts that the decedent was predominantly motivated in making the transfers by the desire to save estate taxes. See United States v. Wells, supra. Plaintiff repeatedly testified decedent told her that he was acting at the suggestion of Mr. McCowan, his estate plan adviser, in making the transfers, and that he did not seem to understand too much about it himself. She also testified that no difference in her economic relationship with decedent was contemplated by these transfers.

On the basis of the entire record, the Court has no difficulty in concluding that the decedent's transfers to his wife of the family residence and of the five insurance policies were made in contemplation of death, for the purpose of avoiding estate taxes, and that therefore the Commissioner of Internal Revenue properly included these transfers in the decedent's gross estate for estate tax purposes under section 2035 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 2035.

This opinion shall constitute the findings of fact and conclusions of law required by Rule 52(a) of the Federal Rules of Civil Procedure. Submit order.