Elizabeth M. COONEY, Executrix of the Estate of John R. Cooney, Plaintiff,

v.

UNITED STATES of America and John E. Manning, Former Collector of Internal Revenue, Defendants.

Civ. A. No. 554–59.

United States District Court
D. New Jersey.

May 3, 1963.

Crummy, Gibbons & O'Neill, by Daniel J. Moore, Newark, N. J., for plaintiff.

Louis F. Oberdorfer, Asst. Atty. Gen., Edward S. Smith, David A. Wilson, Jr., Robert F. Sama, Dept. of Justice, Washington, D. C., for defendants.

COOLAHAN, District Judge.

This is a suit for refund of certain estate taxes paid by the executors of the Estate of John R. Cooney. The case was tried before this Court without a jury.

John R. Cooney died testate on January 14, 1947 of diabetes. The joint executors of his estate were his daughter, Elizabeth M. Cooney and his son, Vincent W. Cooney.

For the greater part of his life decedent was associated with Igoe Brothers, Inc., Newark, N. J. In the fall of 1936 he underwent a series of operations for a prostate gland condition and shortly thereafter retired from business activity. During the period from 1936 until his death in 1947, the decedent made certain transfers to his children of stocks and bonds in both Igoe Brothers, Inc. and Eybro Realty Corporation. The bulk of these gifts were made through 1937 and 1938 and for each year appropriate gift tax returns were filed though no tax was due in 1937. The gifts were made to his children, Elizabeth, Frank and Vincent. He made no gift to his other living son, Raymond, ostensibly because of his intemperance. Further gifts were made by decedent to his three children in 1939, 1941, 1942 and 1946. Gift tax returns were filed for all of these except the 1946 transfers.

The decedent's will was drawn on December 30, 1938. (Joint Ex. 2.) The will provided for a $1,000.00 bequest to Raymond, with the major part of the estate to be divided equally among his other children, Elizabeth, Frank and Vincent.

The estate tax return was filed on May 13, 1948. (Joint Ex. 1.) Subsequent to the filing of the return the same was audited and examined. (Tr. 97.) Certain adjustments were proposed by the Internal Revenue Service which included in the taxable estate the transfers made prior to death and previously described. The grounds of these inclusions were asserted to be gifts made in contemplation of death under 26 U.S. C.A. § 811(c) (1) (A). After conferences with the attorney for the estate and the executors in September of 1950, a figure evidencing the total estate tax due was determined and set at $38,663.-26, which figure was entered upon Form 870 on October 1, 1950. (Joint Ex. 5.) The attorney then representing the estate addressed a letter recognizing the amount due under this Form 870 agreement (Joint Ex. 4) and this deficiency was subsequently paid by the estate. Along with this Form 870 there was a valuation agreement regarding the Eybro Realty Corporation stocks and bonds and Igoe Brothers, Inc., securities. (Joint Ex. 6.)

On October 9, 1953 the executors filed a claim for refund of this additional tax on the chief theory that the gifts taxed were not made in contemplation of death. (Ex. P–4.) At the time of the above claim for refund the statute of limitations had run against the Internal Revenue Service and hence no further assessment could have been made by that Department.

The United States has taken the position that the execution of Form 870

under the circumstances as presented in the instant case presents a bar of equitable estoppel to the assertion of the executors' claim for refund. In support of their position they strongly rely upon the cases of Cain v. United States, 255 F.2d 193 (8th Cir. 1958) and Schneider v. Kelm, 137 F.Supp. 871 (D.Minn.) aff. 237 F.2d 721 (8th Cir. 1956). These cases support the theory of estoppel as alleged by the defendant. In Cain the Court stated: " * * * [W]e think it is sufficient to preclude a taxpayer from claiming refund, in relation to an executed settlement agreement, that the statute of limitations has run against the right of the Commissioner to deal with the situation further."

The above clearly fits the factual pattern of this case.

However, the view of the Eighth Circuit has not been uniformly accepted in all jurisdictions. As pointed out in the Cain case, in the dissenting opinion by Judge Van Oosterhout (255 F.2d at pp. 199–201), the majority of cases seem to take a contrary position. See Bennett v. United States, 231 F.2d 465 (7th Cir. 1956); Joyce v. Gentsch, 141 F.2d 891 (6th Cir. 1944) and Morris White Fashions, Inc., v. United States, 176 F.Supp. 760 (S.D.N.Y.1959).

The Third Circuit has considered a matter where there were similar factual contentions in Bank of New York v. United States, 170 F.2d 20 (3rd Cir. 1948). In that case it was held that an informal agreement to settle a disputed tax item which was never finalized in the prescribed manner under 26 U.S.C.A. § 3670 did not estop the taxpayer from seeking a refund. The Court relied on certain of the above cited cases and the decision in Botany Worsted Mills v. United States, 278 U.S. 282, 49 S.Ct. 129, 73 L.Ed. 379 (1929).

While in sympathy with the government's position in the instant case, it is difficult to find the elements necessary to constitute an estoppel in light of the law as propounded in the Bank of New York decision, supra. This Court is constrained to follow the view of the Third Circuit and therefore holds that the claim for refund is not barred upon grounds of estoppel, either equitable or otherwise.

It must be pointed out that the Bank of New York case, supra, and the Court decisions embracing its view allow the Internal Revenue Service to seek additional taxes due by way of "equitable recoupment". However, the government has not seen fit in this case to attempt any additional recoupment and so at this stage of the proceedings only the amounts claimed in the demand for refund may be considered.

 The additional question before the Court is the status of the transfers made by the decedent in the years mentioned above. The statute in question provides that gifts made by decedent within two years prior to his death, unless shown to the contrary, shall be deemed to have been made in contemplation of death within the meaning of that statute. See 26 U.S.C.A. § 811(c). The gifts in question were first made in 1937, some ten years prior to the decedent's death. However, if the purpose of these transfers were to defeat the death tax, or as a substitute for a testamentary disposition, or made for any other motive associated with death the same would be taxable under the above cited provision and its more recent counterpart. See Speights v. United States, 214 F.Supp. 24 (D.N.J. 1962). If the thought of death is a substantial motive precipitating disposition of the property then the transfers will be taxable though death is not imminent. See United States v. Wells, 283 U.S. 102, 51 S.Ct. 446, 75 L. Ed. 867 (1939) and Oliver v. Bell, 103 F.2d 760 (3rd Cir. 1939) pointing out the plaintiff's burden of proof as well (103 F.2d p. 763).

After considering the testimony and the exhibits, this Court is of the opinion that the decedent was not transferring property in contemplation of death. Since he was no longer active in the business to which he had devoted his life it was quite probable that he wished his children to assume interest in the af-

fairs of the business and its conditions. (See Ex. 1, 2, 5 wherein he sets forth his reasons for making the bequests.) His daughter Elizabeth testified that it was his desire to make her financially independent since she was suffering from tuberculosis (Tr. 11) and pursued no occupation other than that of housekeeping for her father at the time (Tr. 8). He desired to render financial assistance to his son Vincent since Vincent's economic circumstances at the time were not favorable. (Tr. 41–42.) The evidence the Government suggests indicated transfers in contemplation of death are merely in the form of vague circumstantial inferences from the acts of the decedent as testified to by his children and as indicated by the exhibits.

In its brief the government argues that these acts show a scheme to dispose of his property and defeat taxes. This is neither substantiated by any of the evidence nor did Mr. Cooney's attorney, Mr. Riker, so testify during his examination. The government attempted to show that the decedent's attorney had advised him of a necessary plan to escape estate taxes but the Court is not convinced that such a plan was either suggested or put into effect. In fact, on cross-examination (Tr. 85) counsel for the executors addressed the following question to Mr. Riker, whom the government had called as its own witness, (referring to his conversation with the decedent):

"Q. And advise him to make a record of his *actual* motive?

"A. Yes."

If the intentions as exhibited by the letters addressed by the decedent to his children reflect his real motive in making the gifts then such motive is not in contemplation of death. As to the propriety of the motive suggested by the letters and the testimony, see Wells, supra (283 U.S. at page 118, 51 S.Ct. at page 452).

Both Elizabeth and Vincent Cooney appeared to be honest, forthright witnesses. There was no indication exhibited by their testimony that they were trying to slant or conceal any fact within their recollection. They were not evasive and answered as directly as possible under the circumstances of the long period of time which had elapsed.

This Court is of the opinion that the gifts in question were not made in contemplation of death and hence judgment will be entered for the plaintiffs on their claim for refund.

This opinion shall constitute findings of fact and conclusions of law required by Rule 52 of the Federal Rules of Civil Procedure.

Let an appropriate order be submitted.