Eugene B. COMBS, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. IP 90–95–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Jan. 31, 1992.

Joseph R. Impicciche, N. Kent Smith, Hall Render Killian Heath & Lyman, Indianapolis, Ind., for plaintiff.

Jeffrey L. Hunter, Asst. U.S. Atty., Office of U.S. Atty., Indianapolis, Ind., D. Patrick Mullarkey, Tax Div. U.S. Dept. of Justice, Washington, D.C., for defendant.

## ORDER DENYING GOVERNMENT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

TINDER, District Judge.

May a taxpayer be equitably estopped from prosecuting a tax claim because the taxpayer executed an informal settlement agreement form in which the taxpayer agreed not to dispute the assessment and the government agreed to abate penalties? Yes, in some situations, but not on the facts presented in this matter. The sole question presented is whether equity estops taxpayer Eugene B. Combs ("Combs") from prosecuting his claim that the government wrongfully assessed employee withholding taxes against him. The Court will deny the United States' Motion for Partial Summary Judgment because the doctrine of equitable estoppel does not bar Combs' claim.

## BACKGROUND

Taxpayer Combs brought action in this Court disputing FICA and FUTA taxes the government claims he owed for his employees. Combs claims the government's position is incorrect, because the persons were not his employees but rather were independent contractors to whom withholding taxes did not apply. This matter would proceed directly to the merits of that claim,

but for an earlier agreement reached between Combs and the government on this very same issue.

Following an audit, conducted in July 1986, the Internal Revenue Service ("IRS") informed Combs that he would be assessed for withholding taxes for the 1984 and 1985 tax years. The IRS proposed that Combs would be assessed $12,744 for unpaid withholding taxes and $3,234 in penalties. On February 17, 1987, Combs met with the IRS and agreed orally to an assessment of withholding taxes in the amount of $12,744. The IRS agreed not to assess the proposed penalties in the amount of $3,234.

On April 7, 1987, the plaintiff executed Form 2504–AD,[1] which provided that Combs would pay the $12,744 assessment and that, if the IRS accepts the "offer," then

> the case will not be reopened in the absence of fraud, malfeasance, concealment, or misrepresentation or material fact, or an important mistake in mathematical calculation; and no claim for abatement, credit, or refund will be filed or prosecuted other than for the overassessment shown above.

(Br.Supp.Mot.Partial Summ.J., Ex. A.) Form 2504–AD contains explicit language that it "is not a final closing agreement under section 7121 of the Internal Revenue Code." The Associate Chief of the Appeals Section of the Indianapolis District Office of the IRS executed the document on April 15, 1987 on behalf of the Commissioner of the IRS.

On December 5, 1989, Combs received a formal assessment for the withholding taxes set forth in the agreement. On January 24, 1990, Combs paid the withholding taxes for one employee for the first quarter of 1984; he contemporaneously filed for a refund of that payment. On January 25, 1990, the Service denied Combs for a refund. Combs filed his First Amended Complaint seeking a refund of the withholding taxes paid and an abatement of the assessment and penalties.

---

**1.** This Form is titled "Excise or Employment Tax–Offer of Agreement to Assessment and Collection of Additional Tax and Offer of Acceptance of Overassessment."

## DISCUSSION

■ In the world of fast food chicken, "parts is parts"; but, in the world of tax settlements, "promises are not promises." Not all promises are created or treated equally. Whether a settlement agreement between a taxpayer and the IRS is *in itself* binding depends upon whether the agreement is "formal" or "informal." These are terms of art defined by the Internal Revenue Code ("IRC"). Taxpayers who have entered into final closing "agreements" under Section 7121 [2] of the IRC (26 U.S.C.A. § 7121 (West 1984)) or "compromises" under Section 7122 controversies are bound by those documents. If a taxpayer later attempts to litigate an issue settled in one of these formal agreements, then the government may submit the document as a bar to the action.

■ However, if the parties have entered into any kind of agreement other than one meeting the requirements of Sections 7121 or 7122, then the agreement itself may not be enforced against the party contesting the subject matter of the agreement. *Botany Worsted Mills v. United States*, 278 U.S. 282, 289, 49 S.Ct. 129, 132, 73 L.Ed. 379 (1929). IRS regulations establishing procedures for closing agreements and compromises are the exclusive means of settling tax disputes by contract. *Schumaker v. C.I.R.*, 648 F.2d 1198 (9th Cir.1981). Agreements and compromises entered under Section 7121 or 7122 are the exclusive method by which tax cases may be compromised by a legally binding document. *Botany Worsted Mills*, 278 U.S. at 288, 49 S.Ct. at 131; *Matter of Avildsen Tools & Machine, Inc.*, 794 F.2d 1248 (7th Cir.1986). Because Congress pro-

vided those "formal" methods, the Court declared that Congress intended those to be the only sufficient modes of binding settlement. *Id.* 278 U.S. at 289, 49 S.Ct. at 132. Thus, informal agreements do not have the legal effect of barring subsequent actions disputing the matters subject to the agreement.

The government agrees that the settlement at issue in this matter does not satisfy the requirements of a formal agreement. Form 2504–AD states on its face that it is not a Section 7121 final closing agreement. Therefore, the Court must determine whether this informal agreement, "[t]hough not binding in itself, may when executed become, under some circumstances, binding on the parties by estoppel." *Id.* An informal agreement, by itself, does not estop a taxpayer from later contesting a matter so settled. *Whitney v. United States*, 826 F.2d 896 (9th Cir.1987).

■ Equitable estoppel is a judicially-developed doctrine that precludes a party to a lawsuit, because of some improper conduct on that party's part, from asserting a claim or defense, regardless of its substantive validity. *Phelps v. Federal Emergency Management Agency*, 785 F.2d 13, 16 (1st Cir.1986). Elements of equitable estoppel are four: (1) There must be a false representation or wrongful silence; (2) The error must originate in a statement of fact, not law; (3) The person claiming the benefits of estoppel must be ignorant of true facts; and (4) The person must be adversely affected by the acts or statements of the person against whom estoppel is claimed. *Morris White Fashions, Inc. v. United States*, 176 F.Supp. 760, 764 (S.D.N.Y.1959). Although prior

---

**2.** Section 7121, titled "Closing Agreements," provides as follows:

(a) Authorization.—The Secretary is authorized to enter into an agreement in writing with any person relating to the liability of such person (or of the person or estate for whom he acts), in respect of any internal revenue tax for any taxable period.

(b) Finality.—If such agreement is approved by the Secretary (within such time as may be stated in such agreement, or later agreed to) such agreement shall be final and conclusive, and except upon a showing of fraud or mal-

feasance, or misrepresentation of a material fact—

(1) the case shall not be reopened as to the matters agreed upon or the agreement modified by any officer, employee, or agent of the United States, and

(2) in any suit, action, or proceeding, such agreement, or an determination, assessment, collection, payment, abatement, refund, or credit made in accordance therewith, shall not be annulled, modified, set aside, or disregarded.

26 U.S.C.A. § 7121 (West 1984).

case law provides some guidance on the equitable preclusive effect of informal agreements, the result is controlled ultimately by the common law of equity.

Cases have applied the doctrine of equitable estoppel to an informal settlement agreement in two different fact situations. The first situation supporting estoppel focusses on the difficulty of litigating parts of larger settlement agreements; note that this type of estoppel departs from the usual "detrimental reliance" standard. Some circuits have refused to allow claims for a refund which would have the effect of undoing settlement agreements involving several taxpayers or more than one disputed claim made by a single taxpayer—known as a "package settlement." *E.g.,* *Stair v. United States,* 516 F.2d 560 (2nd Cir.1975) (provides a summary of other circuits). The Seventh Circuit has stated that due to the integrated nature of multiple settlements, there is no equitable way to undo a portion of the settlement; thus, the taxpayer is estopped on that basis. *General Split Co. v. United States,* 500 F.2d 998 (7th Cir.1974). Estoppel does not lie on that basis in this matter, because there is one taxpayer and one claim only.

An informal settlement agreement also may provide a basis for equitable estoppel if the government is barred by a statute of limitation to pursue assessments or appeal a decision. Thus, if the government is "duped" by the agreement and fails to make all assessments timely, then the government's detrimental reliance may have a remedy. This application of equitable estoppel is not universally accepted. *Stair v. United States,* 516 F.2d 560 (2nd Cir.1975). The Seventh Circuit has addressed this issue and has resolved the dispute in the favor of taxpayers. *Bennett v. United States,* 231 F.2d 465 (7th Cir. 1956).

*Bennett* involved an informal settlement agreement between an executor and the government over the amount of estate tax owed. The executors paid the agreed-upon deficiency, but after the statute of limitations for assessment expired the executor filed a claim for a refund of the taxes which had been paid. Reversing the district court, the Seventh Circuit allowed the executor's action because the agreement was not a "formal closing agreement." The court stated that the government knew or should have known that the waiver as executed was not binding, because the form itself recited that it was not binding. The court concluded that the government should not have let its rights expire and therefore could not claim in equity.

 Thus, the controlling law of this circuit has refused to allow the government to equitably estop a taxpayer from contesting a matter not subject to formal settlement. The facts of this case support the general principles cited by the Seventh Circuit in support of its holdings. An informal settlement agreement executed by the government is not entitled to special equitable treatment; either the facts of the matter support an equitable estoppel claim or they do not. *See McGraw–Hill, Inc. v. United States,* No. 88 Civ. 7261, 1990 WL 6550, at *5 (S.D.N.Y. Jan. 22, 1990) (government did not establish basis for equitable estoppel after taxpayer executed Form 870–AD). In this matter, the elements of equitable estoppel have not been satisfied. Simply put, the government should not have relied on the representations made in Form 2504–AD; and, any reliance was probably not detrimental.[3]

In this case, as in *Bennett,* the government knew or should have known that Form 2504–AD was not in itself binding; the government should not have let its rights expire, if any did in fact expire. If any entity must be charged with knowledge of the tax laws, it must be the IRS. The estoppel cases relied upon by this Court are not novel or low profile. Beyond knowledge of the obvious point that informal agreements are not in themselves bind-

---

**3.** Whether the government will suffer a legal detriment by its reliance on the agreement is an issue that need not be reached at this point, because the Motion will be denied for lack of justified reliance. Issues regarding the government's ability to (re-)assess penalties, etc. are left for another day, if ever.

ing, the IRS should have known that this judicial circuit does not look favorably upon estoppel claims based upon informal agreements.

Moreover, at the time of the settlement, a Revenue Procedure was in effect which provided that taxpayers who made informal settlements regarding withholding liability are eligible for relief. Rev.Proc. 85–18, 1985–1 C.B. 518. That provision is not a private, in-house document, but rather is published to benefit and guide taxpayers generally. This Court need not hold that a Revenue Procedure provides a taxpayer any substantive rights. Revenue Procedure 85–18 is relevant in this analysis because it provides further evidence that the IRS was aware that informal agreements are not binding *specifically in this context*. Further, Revenue Procedure 85–18 seems to provide that it is the policy of the IRS to allow taxpayers to receive adequate assurance that they owe this kind of withholding tax—regardless whether the taxpayer has made a formal or informal agreement. In sum, the government does not have a reasonable basis from which to claim reliance upon Combs' representation that he would not contest the assessment.

Thus, the government's equitable estoppel claim is a shield with no facts supporting it. If Combs' claim is valid, then justice and equity requires that it be heard in this forum.

## CONCLUSION

The government's Motion for Partial Summary Judgment is DENIED. This matter will be scheduled for trial in a subsequent order.

ALL OF WHICH IS ORDERED.