ESTATE OF ELLA T. MEYER, EAST WISCONSIN TRUSTEE COMPANY, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2860–71.    Filed April 17, 1972.

*R. O. Schwartz* and *James R. Oberly*, for the petitioner.
*Robert M. Burns*, for the respondent.

#### OPINION

DAWSON, *Judge:* On November 18, 1971, petitioner filed a "Motion for Severance of Issues" and a "Motion to Dismiss, or in the Alternative, to Strike Answer." On January 10, 1972, petitioner filed a memorandum in support of its motions, and on February 15, 1972, respondent filed a memorandum brief in reply. The Court set the motions for hearing in Milwaukee on March 13, 1972. Without objection by respondent, the motion for severance of issues was granted, and the parties submitted a full stipulation of pertinent facts with respect thereto. All of the stipulated facts are found accordingly.

At issue are (1) whether an Estate Tax Closing Letter (Form L–154) constitutes a final closing agreement within the ambit of section 7121, I.R.C. 1954, and (2) whether the issuance of such a letter by a district director of internal revenue, purportedly evidencing the fact that the Federal estate tax liability has been discharged for the designated estate, legally or equitably estops the Commissioner of Internal Revenue from thereafter determining a deficiency in estate taxes against the estate within the applicable period of limitations.

The East Wisconsin Trustee Co. was appointed the executor of the Estate of Ella T. Meyer after her death on December 18, 1966. At

all times pertinent to this matter the East Wisconsin Trustee Co. had its principal place of business at Manitowoc, Wis.

A Federal estate tax return was due to be filed on March 18, 1968. A Federal estate tax return was filed on September 7, 1967, and based upon such return an estate tax was assessed in the amount of $68,883.78. The estate tax return was closed by survey after assignment on February 18, 1969. This is an internal procedure and the petitioner was not contacted or given notice of such action. An Estate Tax Closing Letter (Form L–154), dated February 25, 1969, signed by the district director of internal revenue, Milwaukee, Wis., was mailed to the East Wisconsin Trustee Co., executor, reflecting a net estate tax of $68,-883.78. This letter stated:

If proof of settlement of the Federal estate tax liability is required by a third party, this closing letter, together with cancelled check(s) or receipt(s) showing payment of the net estate tax shown above, and interest and penalties (if any), may be exhibited to such third party as evidence that the Federal estate tax liability has been discharged for the above named estate.

The estate tax return reported as part of the decedent's assets 3,476 shares of the Manitowoc Co., Inc., at a value of $40 per share. In audits of two other contemporaneous estates, reporting shares of the Manitowoc Co., Inc., an estate tax examiner determined that such stock had a value of $50 per share. A Reopening Memorandum concerning the instant estate was prepared by the examining officer on July 29, 1969, and approved by the acting assistant regional commissioner (Audit) on August 4, 1969. This Reopening Memorandum is an internal document and, therefore, the petitioner did not receive a copy of the document.

A statutory notice of deficiency was mailed to the Estate of Ella T. Meyer, East Wisconsin Trustee Co., executor, on March 11, 1971, in which there was determined an estate tax deficiency of $10,368.40. The statutory notice of deficiency determined that the fair market value of 3,476 shares of the Manitowoc Co., Inc., stock was $50 per share rather than the $40 returned and that the fair market value of 35 shares of Reiss Steamship Co. was $145 per share rather than the $125 returned.

The East Wisconsin Trustee Co., executor, had not been finally discharged as executor on March 11, 1971, but it had made distribution of the estate's assets and had no assets of the estate in its hands as executor on that date.

Section 7121 of the Internal Revenue Code of 1954 sets forth the exclusive procedure under which a final closing agreement as to the tax liability of any person can be executed. *Botany Worsted Mills* v. *United States*, 278 U.S. 282 (1929); *Brubaker* v. *United States*, 342 F. 2d 655 (C.A. 7, 1965); *Bennett* v. *United States*, 231 F. 2d 465 (C.A.

7, 1956) ; *George H. Baker*, 24 T.C. 1021, 1024 (1955) ; and *Earl C. Parks*, 33 T.C. 298, 302 (1959), acq. 1960-1 C.B. 5. That section envisages an agreement knowingly entered into by both parties.[1] *H. M. Harrington, Jr.*, 48 T.C. 939, 953 (1967), affirmed on another issue 404 F. 2d 237 (C.A. 5, 1968).

Here no such agreement was entered into and petitioner does not so contend. Petitioner's position is that the respondent lacks authority to revalue the securities involved in this case and is estopped from doing so after the issuance of the Estate Tax Closing Letter dated February 25, 1969. In *McIlhenny* v. *Commissioner*, 39 F. 2d 356 (C.A. 3, 1930), it was held that despite a prior audit, determination of a deficiency with respect to other items, and payment of the additional tax determined to be due, the Commissioner was still free, without having before him any evidence of fraud, malfeasance, misrepresentation of fact, or new evidence of any character, to disallow a deduction previously allowed and to determine an additional deficiency in income tax since no final closing agreement had been executed. The result reached in the *McIlhenny* case was expressly approved in *Burnet* v. *Porter*, 283 U.S. 230 (1931). See also *Sherwin* v. *United States*, 320 F. 2d 137, 154 (C.A. 9, 1963) ; *Page* v. *Lafayette Worsted Co.*, 66 F. 2d 339 (C.A. 1, 1933) ; *L. Loewy & Son* v. *Commissioner*, 31 F. 2d 652 (C.A. 2, 1929) ; *Holmquist* v. *Blair*, 35 F. 2d 10 (C.A. 8, 1929) ; *Austin Co.* v. *Commissioner*, 35 F. 2d 910 (C.A. 6, 1929) ; and *Estate of Charles H. Thieriot*, 7 T.C. 1119, 1123-1124 (1946).

Petitioner relies heavily upon the cases of *Woodworth* v. *Kales*, 26 F. 2d 178 (C.A. 6, 1928), and *Boyne City Lumber Co.* v. *Doyle*, 47 F. 2d 772 (W.D.Mich. 1930), to support its argument that the Commissioner lacks authority to revalue the securities in question. Both of those cases involved circumstances substantially different from this case. In each of those cases the Commissioner sought to change his prior estimates of the fair market values of certain assets as of March 1, 1913. In the instant case no prior valuation was made by the respondent and, as petitioner acknowledges in its memorandum brief, no investigation of any substance was initially made by respondent with respect to the value of the securities when the estate tax return was closed on survey. Moreover, neither *Kales* nor *Boyne City* represent the prevailing view of the law on this point nor are they controlling in this case under our decision in *Jack E. Golsen*, 54 T.C. 742 (1970), affirmed on another issue 445 F. 2d 985 (C.A. 10, 1971). Consequently,

---

[1] Sec. 301.7121-1(d), Proced. & Admin. Regs., provides that closing agreements "shall be executed on forms prescribed by the Internal Revenue Service." Such an agreement must be signed by the taxpayer and approved by the Secretary or his delegate. 26 C.F.R. sec. 601.202.

it is our view that respondent had ample authority to determine a deficiency in estate tax within the applicable period of limitations based upon a revised valuation of the securities included in the gross estate of the decedent.

Petitioner also argues that respondent should be precluded or estopped from holding the East Wisconsin Trustee Co., executor, personally liable for the deficiency determined in this case. Clearly we have no jurisdiction to delve into the matter of personal liability of the executor since no petition concerning this question has, as yet, been filed with the Court. *Newton H. Neustadter*, 15 B.T.A. 839 (1929); *Safe Deposit & Trust Co. of Baltimore, Executor*, 35 B.T.A. 259 (1937); and *Estate of Charles M. Dupuy*, 48 T.C. 918 (1967). However, even if the executor of the estate is no longer personally liable for any deficiency in estate tax, a statutory notice of deficiency addressed to the executor in his representative capacity is still effective for the purpose of determining the tax liability of the estate. *Estate of Theodore Geddings Tarver*, 26 T.C. 490 (1956), affd. 255 F. 2d 913 (C.A. 4, 1958). And the mere fact that the estate no longer has any assets will not render a proceeding to determine its correct estate tax liability moot. *Stanton* v. *Commissioner*, 98 F. 2d 739 (C.A. 7, 1938), certiorari denied 305 U.S. 650 (1938).

Although the use of the word "discharged" in the text of the Estate Tax Closing Letter mailed to petitioner may have been ill advised, such notice did not so deleteriously affect the administration of the estate here involved that the Commissioner should now be estopped from timely determining a deficiency in estate tax. In fact, petitioner has failed to demonstrate that any reliance upon the letter has caused the estate to act to its detriment. See *Demirjian* v. *Commissioner*, 457 F.2d 1 (C.A. 3, 1972); *Cleveland Trust Co.* v. *United States*, 421 F.2d 475 (C.A. 6, 1970). Indeed, the only allegation made concerning any detriment is the statement that the East Wisconsin Trustee Co. will be called upon in its capacity as executor to personally pay any deficiencies finally determined in this case.[2] As noted earlier, no such claim is made in this proceeding and that issue is not presently before us.

Under these circumstances we hold that the respondent is not estopped from determining the deficiency in estate tax at issue herein. Accordingly, the petitioner's motion to dismiss or, alternatively, to strike respondent's answer will be denied.

*An appropriate order will be entered.*

---

[2] See *Schuster* v. *Commissioner*, 312 F. 2d 311 (C.A. 9, 1962), affirming in part and reversing in part 32 T.C. 998 (1959) and 32 T.C. 1017 (1959), regarding this question.