EMMA R. DORL, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dorl v. Commissioner
Docket No. 6392-71
United States Tax Court
T.C. Memo 1973-145; 1973 Tax Ct. Memo LEXIS 140; 32 T.C.M. (CCH) 692; T.C.M. (RIA) 73145; July 2, 1973, Filed Emma R. Dorl, pro se. John P. Reis, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION Hall, Judge: Respondent determined a deficiency in petitioner's 1969 Federal income tax of $291.54. Subsequently, respondent reduced this deficiency to $182.84. The principal issue for decision is whether a letter sent petitioner by Revenue Officer Kleiman stating that her income taxes for the calendar year 1969 were "paid in full" constituted a closing agreement within the meaning of Section 7121 [1] and 2 thereby precluded respondent from determining an income tax deficiency for 1969. If respondent is not precluded from determining a deficiency for 1969, we have the *141 further issue of whether petitioner has substantiated her entitlement to all or any part of two income credits claimed on her 1969 return, a foreign tax credit of $403 and a retirement income credit of $229. FINDINGS OF FACT Petitioner, Emma R. Dorl, was a resident of Summit, New Jersey, when she filed her petition in this case. She filed her 1969 income tax return with the district director of internal revenue at Newark, New Jersey, showing an income tax liability of $200, which she paid. Respondent discovered petitioner had made a mathematical error on that return, and that, on the basis of petitioner's reported income, deductions and claimed credits, her 1969 income tax liability was $303.50. Petitioner was contacted by Revenue Officer Kleiman in order to secure payment of the difference between $200 and $303.50, plus interest and penalties, or a total of $116.32. Referring to this amount, Revenue Officer Kleiman, in a letter dated April 8, 1971, stated: 3 When your check for this [$116.32] is received by this office you will have paid in full for the Income Tax Return (Form 1040) for the period ended 12-31-69. Petitioner paid the $116.32 on April 13, 1971. *142 Thereafter petitioner's 1969 return was selected for audit and, as a result of that audit, a statutory notice of deficiency was sent to petitioner on June 17, 1971, based upon the following adjustments: (1) a reduction of the claimed foreign tax credit from $403 to $363.61; and (2) disallowance of the claimed $229 retirement income credit. The statutory notice determined a $291.54 deficiency in income tax. Subsequent information provided by petitioner caused respondent to reduce the deficiency to $182.84. This deficiency is separate and apart from the mathematical error previously discovered. Petitioner filed her petition in this Court on September 13, 1971, and subsequently moved to have the case removed to the United States District Court. That motion was denied. Emma R. Dorl, 57 T.C. 720 (1972). Thereafter this case was tried on March 22, 1972. Petitioner presented no evidence to substantiate the foreign tax credit and retirement income credit claimed on her return, but instead raised the issue whether the letter sent her by Revenue Officer Kleiman precluded respondent from subsequently determining a deficiency for 1969. 4 ULTIMATE FINDINGS OF FACT
*143 The letter from Revenue Officer Kleiman was not a closing agreement. Petitioner has failed to substantiate the foreign tax credit and the retirement income credit claimed on her 1969 return. OPINION Petitioner, relying upon Section 7121 [2] contends that the letter of April 8, 1971, sent to her by Revenue Officer Kleiman, together with her payment of $116.32, constituted a closing agreement between her and respondent, and respondent was precluded from subsequently determining any deficiency for 1969. Respondent, on the other hand, contends that such letter was not a closing agreement and did not estop him from assessing a deficiency for 1969. We agree with respondent. *144 Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue. ↩
2. SEC. 7121. CLOSING AGREEMENTS. (a) Authorization. - The Secretary or his delegate is authorized to enter into an agreement in writing with any person relating to the liability of such person (or of the person or estate for whom he acts), in respect of any internal revenue tax for any taxable period. (b) Finality. - If such agreement is approved by the Secretary or his delegate (within such time as may be stated in such agreement, or later agreed to) such agreement shall be final and conclusive, and except upon a showing of fraud or malfeasance, or misrepresentation of a material fact - (1) the case shall not be reopened as to the matters agreed upon or the agreement modified by any officer, employee, or agent of the United States, and (2) in any suit, action, or proceeding, such agreement, or any determination, assessment, collection, payment, abatement, refund, or credit made in accordance therewith, shall not be annulled, modified, set aside, or disregarded. See also Income Tax Regs., section 301.7121-1(d) (1), which provides that "All closing agreements shall be executed on forms prescribed by the Internal Revenue Service." 5 The letter sent petitioner by Revenue Officer Kleiman was sent to obtain petitioner's payment of the additional tax due as a result of the recomputation of her tax by the Internal Revenue Service after elimination of the mathematical error. This letter was not a closing agreement, did not purport to be one, and in fact could not have been one, since Revenue Officer Kleiman had no authority to execute closing agreements. See Delegation Order No. 97 (Rev. 9), relating to closing agreements, which was in effect on April 8, 1971, 1971-1 C.B. 656. Section 7121 envisages a closing agreement knowingly entered into by both parties. Petitioner here "requested no closing agreement, executed none of the prescribed forms for such agreement and lent no signature to the alleged agreement." H. M. Harrington, Jr., 48 T.C. 939, 953 (1967), affirmed on another issue, 404 F. 2d 237 (C.A. 5, 1968). See also Estate of Ella T. Meyer, 58 T.C. 69 (1972), and Kekaha Sugar Co., Ltd., 6 13 B.T.A. 690, 696 (1928). Moreover, the letter in question does not estop respondent from issuing a statutory notice to petitioner for 1969. "It is a settled principle of law that the United States is not bound by the unauthorized acts of its agents, that it is not estopped to assert the lack of authority as a defense, and that persons dealing with an agent of the government must take notice of the limitations of his authority." Bornstein v. United States, 345 F. 2d 558, 562 (Ct. Cl. 1965). Furthermore, petitioner has not established that she relied on Revenue Officer Kleiman's letter to her detriment. Detrimental reliance is an essential ingredient of estoppel. Bornstein v. United States, supra, at 563; Estate of Ella T. Meyer, supra, at 72; and Arnold A. Schwartz, 40 T.C. 191, 193 (1963). Respondent is not precluded from issuing a statutory notice of deficiency to petitioner for her taxable year 1969 either on the basis of estoppel or having entered into a closing agreement. We next look to the issue of whether petitioner has substantiated that she is entitled to the foreign tax credit and the retirement income credit claimed on her 1969 return. Petitioner put on no evidence with respect to either credit, but chose to rest her case entirely on the basis that Revenue Officer Kleiman's letter constituted a closing agreement. We 7 therefore hold that petitioner has failed to carry her burden of proof with respect to substantiating the disallowed credits. Decision will be entered under Rule 50. ↩